UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ENCORE RECEIVABLE | : | Case No. 1:12-cv-297 |
| MANAGEMENT, INC., *et al*., | : | |
| | : | |
| Plaintiffs, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| ACE PROPERTY AND CASUALTY | : | |
| INSURANCE COMPANY, *et al*., | : | |
| | : | |
| Defendants. | : | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS
DISCOVER PROPERTY AND CASUALTY INSURANCE COMPANY AND ST.
PAUL FIRE'S JOINT MOTION FOR SUMMARY JUDGMENT (Doc. 113)**

This civil action is before the Court on Defendants'[1] joint motion for summary

judgment (Doc. 113) and the parties' responsive memoranda (Docs. 131, 132, 140).

**I.  BACKGROUND FACTS AND PROCEDURAL POSTURE**[2]

Defendants submit this motion in response to Plaintiffs' motion for partial

summary judgment (Doc. 66) and in support of their summary judgment motion seeking

a declaration that neither owes any obligation to Plaintiffs in connection with the

underlying matters, including any of the alternative declaratory relief sought by Plaintiffs.

Plaintiffs bring the instant claims under general liability policies issued by

Discover to Plaintiffs' parent Convergys for annual periods from October 1, 2005 to

---

[1]  The moving Defendants are Discover Property and Casualty Insurance Company ("Discover")
and St. Paul Fire and Marine Insurance Company ("St. Paul"), collectively Defendants.

[2]  The Court incorporates herein the facts as presented in this Court's Order at Doc. 141.

October 1, 2011 and excess liability policies issued by St. Paul to CMG for annual periods from October 1, 2005 through October 1, 2010.  (Doc. 1 at ¶¶ 63, 68, 75, 82).[3]

Despite Plaintiffs' argument to the contrary, the Court's prior ruling on Defendants' Rule 12(c) motion does not *per se* resolve the pending motions in Defendants' favor.  All that is required to avoid dismissal through a motion for judgment on the pleadings is that a complaint "contain direct or inferential allegations respecting all the material elements under some viable legal theory."  *Commercial Money Ctr., Inc. v. llinois Union Ins. Co*., 508 F.3d 327, 336 (6th Cir. 2007).  The Court's prior ruling found only that the "complaint meets the minimal pleading requirements necessary to sate 'plausible claims' for which relief may be granted."  (Doc. 98 at 1825).  The ruling does not contain any analysis of whether the underlying allegations fall within the Policies' insuring agreements or potential application of the various exclusionary defenses.

## II. UNDISPUTED FACTS[4]

I. The Policies

    A. *Primary Policies*

    1.    Discover issued six Commercial Insurance Policies to Convergys Corporation ("Convergys") and its subsidiaries covering the period from October 1, 2005 to October 1, 2011 (the "Discover Policies").  (Doc. 80-4 at 38; Doc. 72-1 at 28; Doc. 72-2 at 27).

---

[3]  Plaintiffs admit that the 2009 and 2010 policies do not afford coverage because the "recording exclusion" of those policies bars coverage.

[4]  *See* Docs. 114 and 132.

2.  Old Republic Insurance Company ("Old Republic") issued a Commercial Insurance Policy to Convergys and its subsidiaries for policy year October 1, 2011 to October 1, 2012 (the "Old Republic Policy").  (Doc. 69-1).

B. *Umbrella Policies*

3.  Defendant American Home Assurance Company ("American Home") issued three Commercial Umbrella Liability Policies to Convergys and its subsidiaries covering the period from October 1, 2005 to October 1, 2008 (the "American Home Policies").  (Doc. 1 at ¶ 23).

4.  Defendant ACE Property and Casualty Insurance Company ("ACE") issued four Commercial Umbrella Liability Policies to Convergys and its subsidiaries covering the period from October 1, 2008 to October 1, 2012 (the "ACE Policies").  (Docs. 46-1 and 46-2).

5.  The ACE Policies provide coverage for "sums in excess of the 'retained limit' that the 'insured' becomes legally obligated to pay as damages because of . . . 'personal and advertising injury' to which this insurance applies."  (Doc. 46-1 at 10, 58; Doc. 46-2 at 1, 58).

6.  "Personal and advertising injury" is defined in the ACE Policies to mean: "Injury, including consequential 'bodily injury', arising out of one or more of the following offenses: . . . [o]ral or written publication, in any manner, of material that violates a person's right of privacy . . . ."  (Doc. 46-1 at 26, 74; Doc. 46-2 at 17, 74).

7.  The ACE Policies provide that ACE has "the right and duty to defend the 'insured' against any 'suit' seeking damages for . . . 'personal and advertising injury' . . . [w]hen damages sought for . . . 'personal and advertising injury' are not covered by 'underlying insurance' or any 'other insurance', or any applicable self-insured retention has been exhausted by the payment of 'loss' covered by this policy."  (Doc. 46-1 at 12, 60; Doc. 46-2 at 3, 60).

8.  "Loss" is defined in the ACE Policies to mean "those sums paid in the settlement of a claim or 'suit' or satisfaction of a judgment which the 'insured' is legally liable to pay as damages because of . . . 'personal and advertising injury', after making proper deductions for all recoveries and salvages."  (Doc. 46-1 at 25, 73; Doc. 46-2 at 16, 73).

10. The ACE Policies apply to "personal and advertising injuries" "only if the offense causing the 'personal and advertising injury' takes place in the 'coverage territory' and during the 'policy period.'" (Doc. 46-1 at 10, 58; Doc. 46-2 at 1, 58).

11. With respect to "personal and advertising injury," the word "Occurrence" as defined in the ACE Policies means: "[A] covered offense. All damages that arise from the same act, publication or general conditions are considered to arise out of the same 'occurrence', regardless of the frequency or repetition thereof, the number or kind of media used or the number of claimants." (Doc. 46-1 at 26, 74; Doc. 46-2 at 17, 74).

12. The ACE Policies state that "this insurance does not apply to . . . "'[p]ersonal and advertising injury' arising out of oral or written publication of material whose first publication took place before the beginning of the 'policy period'" (the "First Publication Exclusion"). (Doc. 46-1 at 18, 66; Doc. 46-2 at 9, 66).

13. The ACE Policies state that "this insurance does not apply to . . . '[p]ersonal and advertising injury' arising out of a criminal act committed by or at the direction of the 'insured'" (the "Criminal Acts Exclusion"). (Doc. 46-1 at 18, 66; Doc. 46-2 at 9, 66).

14. The ACE Policies state that "this insurance does not apply to . . . '[p]ersonal and advertising injury' for which the 'insured' has assumed liability in a contract or agreement" (the "Contractual Liability Exclusion"). (Doc. No. 46-1 at 18, 66; Doc. No. 46-2 at 9, 66). The Contractual Liability Exclusion does not apply to liability for damages:

a. That the "insured" would have in the absence of the contract or agreement; or

b. Assumed in a contract or agreement that is an "insured contract", provided the "personal and advertising injury" offense takes place subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an "insured" are deemed to be damages because of "personal and advertising injury", provided:

i. Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

4

          ii. Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

(Doc. 46-1 at 18, 66; Doc. 46-2 at 9, 66).

15.    The ACE Policies state that "this insurance does not apply to . . . 'personal and advertising injury' arising out of any form of communication, including . . . telephone, in which the recipient has not specifically requested the communication. This exclusion also applies to communications which are made or allegedly made in violation of . . . [a]ny statute, ordinance or regulation . . . which prohibits or limits the sending, transmitting, communicating or distribution of material or information" (the "Unsolicited Communications Exclusion").  (Doc. 46-1 at 21, 69; Doc. 46-2 at 12, 69).

16.    Endorsement number 10 to the ACE Policies excludes coverage for "any . . . 'personal or advertising injury' arising out of the providing of or failing to provide any services of a professional nature" (the "Professional Services Liability Exclusion").  (Doc. 46-1 at 44, 94; Doc. 46-2 at 41, 90).

II.    The Claims

    A. *The Wheelock Action*

17.    On or about December 12, 2011, Convergys provided ACE with notice of a lawsuit that had been filed on or about November 14, 2011 by Brandon Wheelock on his own behalf and on behalf of a class of similarly-situated individuals against Hyundai Motor America ("Hyundai") in the Superior Court of Orange County, California, Case Number 302011-00522293-CU-BT-CJC (the "*Wheelock* Action").

18.    Convergys requested ACE to defend, indemnify, and hold Hyundai harmless in the *Wheelock* Action by virtue of the Hyundai Call Center Services Agreement entered into between Hyundai and Convergys, which states that Convergys will defend, indemnify, and hold Hyundai harmless for any wrongful acts or omissions of Convergys, and its subsidiaries, parents, affiliates, officers, employees, subcontractors, or agents.

19.    Plaintiff Convergys Customer Management Group Inc. ("CMG") provided call center services to Hyundai, including but not limited to the recording of

certain calls for quality control purposes, from on or around January 1, 2006 to in or around March 2012. (Doc. at 1 ¶¶ 34, 36).

20.     Neither Convergys, Encore Receivable Management, Inc. ("Encore"), CMG, nor any of Convergys' other subsidiaries are named as defendants in the *Wheelock* Action. (Docs. 46-3 and 46-4).

21.     Hyundai is not an insured under the ACE Policies. (Docs. 46-1 and 46-2).

22.     In the *Wheelock* Complaint, the plaintiffs allege that Hyundai unlawfully recorded telephone calls made to Hyundai's customer service line without first obtaining customer consent in violation of sections 632 and 632.7 of California's Penal Code, which prohibit the recording of confidential communications made by landline telephone, cellular telephone, and cordless telephone without the consent of all parties to the communication. (Doc. 46-3 at ¶¶ 1-3).

23.     The plaintiffs in the *Wheelock* Action seek an order declaring that Hyundai's alleged practice of recording customer calls without consent violates California's Penal Code and an injunction prohibiting Hyundai from violating those provisions in the future, as well as an award of statutory damages, attorneys' fees and costs, and pre- and post-judgment interest. (Doc. 46-3 at 11).

24.     On or about May 18, 2012, Convergys provided ACE with notice of an amended complaint that had been filed in the *Wheelock* Action on or about March 15, 2012.

27.     The class action allegations of the *Wheelock* Amended Complaint state that they have been brought on behalf of a putative class consisting of "[a]ll persons located in California who, at any time during the applicable period preceding the filing of this complaint through the date of resolution, participated in a telephone conversation with Hyundai customer service using a cellular or cordless telephone and whose calls with Hyundai customer service were recorded by Defendants without notice." (Doc. 46-4 at ¶ 21).

## B. The *Knell* Action

28.     On or about February 16, 2012, Katie Knell on her own behalf and on behalf of a class of similarly-situated individuals filed a lawsuit against Encore in the United States District Court for the Southern District of

California, Case Number 12CV0426 W WVG (the "*Knell* Action" or, together with the *Wheelock* Action, the "Lawsuits").

29.     Convergys has not provided ACE with notice of the *Knell* Action under the ACE Policies.

31.     In the *Knell* Action, the plaintiffs allege that Encore unlawfully recorded telephone calls made to Hyundai's customer service line without first obtaining customer consent.  (Doc. No. 46-5 at ¶¶ 1-3).

32.     The plaintiffs in the *Knell* Action assert causes of action for: (1) violations of sections 631 and 632.6 of California's Penal Code; (2) common-law invasion of privacy; (3) negligence; and (4) unlawful, fraudulent, and unfair business acts and practices in violation of section 17200 of California's Business and Professions Code.  (Doc. 46-5 at ¶¶ 26-52).[5]

33.     The plaintiffs in the *Knell* Action seek statutory damages pursuant to section 637.2 of California's Penal Code, an order requiring Encore to disgorge all ill-gotten gains and awarding plaintiffs restitution of all monies wrongfully acquired by Encore, an injunction prohibiting Encore from recording telephone conversations in the future without obtaining consent, and an award of general, special, exemplary, and punitive damages, as well as attorneys' fees and costs and pre-judgment interest.  (Doc. 46-5 at 12-13).

34.     The class action allegations of the *Knell* Complaint state that the action has been brought against Encore on behalf of a putative class consisting of "[a]ll persons in California whose inbound and outbound telephone conversations were monitored, recorded, eavesdropped upon and/or wiretapped without their consent by [Encore] within in the four years prior to the filing of the original Complaint in this action."  (Doc. 46-5 at ¶ 16).

35.     On or about June 25, 2012, the plaintiffs in the *Knell* Action filed an amended complaint.

36.     In the *Knell* Amended Complaint, the plaintiffs assert causes of action for violations of sections 631 and 632.6 of California's Penal Code, common-law invasion of privacy, and negligence against FIA Card Services, N.A.

37.     Encore is not named as a defendant in the *Knell* Amended Complaint.

---

[5]  Plaintiffs deny this fact to the extent that the delegation of Discover's duties addressed therein is subject to various conditions.  (*See, e.g.,* Corbett Dec., Ex. E at 2061-62, Ex. F at 2203-05).

38.     On or about July 2, 2012, the Court in the *Knell* Action issued an Order dismissing Encore from the *Knell* Action without prejudice.

## III.     STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

## IV.     ANALYSIS[6]

Defendants maintain that even if the underlying lawsuits allege a privacy violation based upon "publication," various policy exclusions unequivocally bar coverage. Under

---

[6] Defendants seek judgment on two issues which Plaintiffs do not dispute. First, Discover asks that the Court enter judgment that the Recording Exclusion in the 2009 and 2010 Discover Policies bars coverage under those policies for the Underlying Actions. (Doc. 113, Ex. 1 at 21). Second, Defendants seek judgment that no defendant is obligated to indemnify Plaintiffs with respect to the *Knell* action because Encore was dismissed from that action and thus did not incur any settlement or judgment requiring indemnity.

both the law of Ohio and California, Defendants bear the burden of proving exclusionary terms in an insurance policy apply. Until and unless an insurer can establish that the claim falls solely and exclusively within the scope of the exclusion, it may not avoid its coverage obligations under the policy. *City of Sandusky v. Coregis Ins. Co.*, 192 Fed. Appx. 355, 362-63 (6th Cir. 2006).

### A.    St. Paul's Duty to Defend

The St. Paul policies specifically provide that St. Paul has "no duty to defend any 'protected person' against any claim or suit for damages covered by this agreement." (Corbett Dec., Ex. H). Therefore, St. Paul claims it is entitled to judgment as a matter of law with respect to Plaintiffs' claims against it.

The policy states that "the terms, definitions, conditions, limitations and exclusions that apply to your Immediate Underlying Insurance apply to this agreement, subject to everything that follows." (Doc. 113, Ex. 10).[7] The underlying insurance has an obligation to pay claims expenses by virtue of the form clause. There is not an exclusion for claims expenses, so Plaintiffs argue that while the policy does not have a duty to defend, it does have an obligation to pay claims expenses.

---

[7] The excess insurance policies purchased from St. Paul for 2005 through 2010 obligate St. Paul to pay amounts that "are covered by this agreement; and would have been covered by your 'Immediate Underlying Insurance.'" (Corbett Dec., Ex. H at 2321). St. Paul concedes that the "Immediate Underlying Insurance" referred to are the American Home Policies for 2005, 2006, and 2007, and the ACE Policies for 2008 and 2009. The St. Paul Policies were purchased as part of a single and seamless insurance program, and, as such, specifically agree to adopt the same terms and conditions as the Immediate Underlying Insurance, except to the extent that its policies are specifically in conflict with those terms. (Corbett Dec, Ex. H at 2321).

The St. Paul Policies expressly provide that St. Paul has no duty to undertake the defense of any claim. (Ex. H at 2322). However, Plaintiffs' claims for declaratory judgment seek a declaration that St. Paul and the other Defendants have an obligation to defend "and/or pay for defense costs." While the Court acknowledges that it is a bit attenuated, given the current procedural posture, St. Paul cannot establish as a matter of law that its policies unambiguously contain no obligation to pay for the costs of defense in connection with the *Knell* or *Wheelock* actions, as opposed to the separate duty to undertake Plaintiffs' defense of those actions.

### B. Self-Funded Retention

Next, Discover argues that Plaintiffs' claims seeking a declaration of duties to defend and indemnify must be dismissed because Plaintiffs have not demonstrated satisfaction of the Discover Policies' self-funded retention ("SFR"). The policies' SFR endorsements effectively provide that the insured "retains" to itself some, or all, of the coverage that would otherwise be afforded by those policies. (Corbett Dec., Ex. F). Specifically, in the case of the 2005 and 2006 Discover Policies, the retention amount is $1,000,000 per "incident" (*i.e.*, per offense for purposes of the policies' "personal and advertising injury" coverage). For the 2007 Policies forward, the retention amount is $2,000,000 per offense, an amount equal to the coverage limits. Discover alleges that because Plaintiffs have not demonstrated (or attempted to demonstrate) exhaustion of the Discover Policies' SFRs, the claims against Discover should be dismissed.

However, Plaintiffs need not establish that SFRs are currently satisfied, as Plaintiffs' only claims against Discover are for declaratory judgment. *Stryker Corp. v. Nat'l Union Fire Ins. Co*., 681 F.3d 819, 823-24 (6th Cir. 2012) (denying insurer's motion for summary judgment on claim for declaratory judgment because that insurer "may be liable" for claims in excess of another policy's limit). Plaintiffs seek declaratory rulings against Discover that their policies have obligations to defend and/or pay defense costs in connection with the Underlying Actions, and to the extent there is any liability in connection with the *Wheelock* Action, that their policies obligated them to indemnify such liability. Accordingly, Discover is not entitled to summary judgment based on the SFRs unless it can prove as a matter of law that the policies, including the various SFR provisions, unambiguously preclude any possibility that Discover could have any payment obligation in connection with the underlying claims.

The SFRs do not unambiguously relieve Discover of its unlimited obligation for the payment of defense costs under any of its Policies. In fact, Endorsement 3 in the 2005-06 and 2007-07 years, which sets forth the SFRs applicable to the underlying actions, expressly reaffirms that the defense cost obligation continues until the policy is exhausted "by payments of judgments and settlements" – not defense costs. (Corbett Dec., Ex. E at 2062). Therefore, while the $1 million SFR is reduced by Plaintiffs' payment of defense costs, Discover's unlimited obligation to pay for defense until its $2 million Policy limit has been exhausted by judgment or settlements above that SFR is not. Moreover, under Endorsement 3 in the 2005-06 and 2006-07 Discover Policies, the

indemnity limits remain fully available if the SFR is satisfied solely through the payment of defense, rather than a judgment or settlement.

With respect to the operative SFR endorsement in the later Discover Policies from 2007 forward, the SFRs are expressly inapplicable to the policies' unlimited defense obligation.  (Ex. F at #2203-04).  Accordingly, Discover is not only liable for defense costs under its post-2007 policies, it is liable for those costs from the first dollar.  Finally, with respect to Discover's potential indemnity obligation in connection with the still-pending *Wheelock* Action, even if no defense costs were ever paid under the 2005-06 and 2006-07 policies, and the full $1 million SFR still remained to be satisfied by the payment of damages, that would still leave $1 million in potential indemnity coverage.

Plaintiffs acknowledge that they may exhaust the retention, but they are unaware how much they will spend or what policy will be triggered.  Specifically, there is a question of disputed fact as to whether or not Plaintiffs will exhaust the million dollar retention and trigger defense obligations under those policies in the second $2 million of coverage.  Discover cannot establish that there is no genuine issue of material fact with respect to those two policies.  With the later two policies, the $2 million retention is equal to the $2 million policy limit, but: (1) it does not apply to defense costs; and (2) while they retain the ability to delegate the duty to defend back to the insured, that ability to delegate is subject to conditions.  It is impossible for Plaintiffs to determine if the duty will be delegated or if the conditions will be met.  Absent the delegation of duty, the

12

insurance company has a duty to defend or settle until the limits of insurance have been

exhausted by payment of judgments or settlements. Accordingly, there is a general issue

of material fact as to whether or not Defendants will delegate the duty to the insured.

### C. *Wheelock* Action Claims Prior to October 2010

Defendants maintain that the *Wheelock* action is limited exclusively to telephone

calls made after October 2010 and therefore cannot trigger any insurance policy whose

policy period ends prior to that date.

The *Wheelock* action alleges that Brandon Wheelock placed phone calls to

Hyundai on October 12 and 13, 2011 and that Hyundai recorded some or all of these

calls. (Wheelock Am. Comp. at ¶¶ 17-28). The *Wheelock* action purports to create a

class consisting of all persons "located in California who, at any time during the

applicable limitations period preceding the filing of this complaint through the date of

resolution, participated in a telephone conversation with Hyundai customer service using

a cellular or cordless telephone and whose calls with Hyundai customer service were

recorded by Defendants without notice." (*Id.* at ¶ 21). The *Wheelock* action was filed on

November 14, 2011, seeking damages under California Penal Code § 637.2. The

applicable statute of limitations for that section is one year. *Montaliti v. Catanzariti*, 236

Cal. Rptr. 231, 232 (Cal. App. 1987) (finding a "one-year statute of limitations for '[a]n

action upon a statute for penalty" applies to § 637.2) (quoting Cal. Code Civ. Proc.

§ 340(1)). Therefore, Defendants argue that the applicable class period for the *Wheelock*

13

Action extends back to November 14, 2010 and does not implicate any Discover or St. Paul policy that expired prior to November 14, 2010.

*Montaliti,* while holding that the claims are subject to a one-year statute of limitations, also held that the period for such claims does not begin to run until the underlying plaintiff discovers that its telephone calls were recorded without its knowledge or consent. *Id*., 236 Cal. Rptr. at 233 ("It would be 'incongruous and inconsistent' with [the] that stated aim [of the statute] to hold that the statute of limitations begins to run while the monitoring remains secret."). Plaintiffs suggest there may be a hypothetical class plaintiff whose call was recorded prior to November 14, 2010, but who could claim that he was unable to discover the recordings until within the limitations period, or after November 14, 2010. In light of *Montaliti*'s application of the discovery rule, neither CMG nor the insurers can negate the potential that the *Wheelock* court will determine that an individual who made a call in 2006, but did not discover had been recorded until 2011, made that call "within the applicable limitations period" prior to the filing of the *Wheelock* action, and is thus a member of the class.

Accordingly, Defendants cannot establish as a matter of law that the allegations of the *Wheelock* Complaint do not potentially trigger coverage under the pre-2010 Policies, and thus they are not entitled to summary judgment holding that those Policies have no duty to indemnify or defend.

### D. Unsolicited Communications Exclusion/Statute Exclusion

The policy states that "[t]his insurance does not apply to….Personal and advertising injury arising directly or indirectly out of any action or omission that violates or is alleged to violate…any statute, ordinance or regulation…that prohibits or limits the sending, transmitting, communicating or distribution of material or information."  (Doc. 113, Ex. 8 at 2145).  Defendants argue that if a violation of the relevant California Penal Code Sections constitutes publication, then the unsolicited communications exclusion clearly applies.

The primary policy at issue has a recording and distribution of material or information in violation of law exclusion.  There is also an umbrella policy that sits above that policy.  (Doc. 46, Ex. 1 at 227).  The ACE policy does not have a recording and distribution of material exclusion or an exclusion that mentions recording or dissemination.  Instead, it has an unsolicited communications exclusion which addresses advertising injury claims arising out of any form of communication in which the recipient has not specifically requested the communication.  In sum, there is a very specific recording exclusion in the primary policy and an umbrella policy with a more narrow exclusion.  Thus, when a policyholder is faced with a claim that alleges prohibited recording, it is reasonable for the policyholder to expect that the primary policy does not apply, but that the umbrella policy picks it up.

With respect to the policies that have "unsolicited" communications exclusions, the very title reflects its intent to preclude coverage for claims arising from

15

communications unsolicited by the recipient.  The language of the exclusion itself confirms this meaning and states that coverage is precluded for liabilities arising out of communications "in which the recipient has not specifically requested the communication."  (*See, e.g*., ACE Umbrella Policy, Section V.V.3, Doc. 46-1 at 179). None of the underlying actions involve any call to a recipient who did not specifically request the call.  Plaintiffs, the "recipient[s]" of the communications, did "specifically request[]" them.  (*Id*.)  The fact that Discover needed to expressly exclude claims arising out of alleged violations of statutes that prohibited "recording" precludes the conclusion that an exclusion lacking that specific language unambiguously bars coverage for recording offenses.  If the communication exclusions necessarily and unambiguously applied to statutes that limited "recording," Discover would not have expanded its exclusions in 2009 to expressly exclude claims arising out of laws that limit the "dissemination," "collecting," or "recording" of information.  (Corbett Dec., Ex. G at 2252).

A material question also exists as to whether a reasonable policyholder would expect these exclusions, aimed by its plain terms and context at barring coverage liabilities arising from mass unsolicited "spam" transmissions, and lacking express language directing them to "recording" statutes, would preclude coverage for liabilities arising from the recording of calls the policyholder received from the claimant.  That material question bars summary judgment. *See, e.g., Cont'l Ins. Co. v. Louis Marx & Co*., 415 N.E.2d 315, 317 (Ohio 1980).

16

## V.   CONCLUSION

Accordingly, for the foregoing reasons, Defendants' joint motion for summary judgment (Doc. 113) is **GRANTED IN PART** and **DENIED IN PART**.  Specifically: (1) to the extent Plaintiffs' complaint can be construed as asserting any claims under the 2009 and 2010 Discover policies, the Recording Exclusion in those Policies bar coverage for the underlying actions; and (2) no Defendant is obligated to indemnify Plaintiffs with respect to the *Knell* action as the only remaining coverage claims are for the costs they incurred in defending that action prior to dismissal.  Defendants' motion for summary judgment is **DENIED** in all other respects.

**IT IS SO ORDERED**.

Date:  7/3/13                                                  *s/ Timothy S. Black*
                                                                 Timothy S. Black
                                                                 United States District Judge